IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: ) | CASE NO. BK08-40125-TJM |
| ) | |
| JEFFREY A. FISCHER and ) | CH. 12 |
| MELANIE J. FISCHER, ) | |
| ) | |
| Debtor(s). ) | |

ORDER

Trial was held in Lincoln, Nebraska, on April 25, 2013, regarding Fil. #162, Motion for Contempt and Motion for Sanctions, filed by the debtors, and Fil. #172, Resistance and Fil. #173, Amended Resistance, filed by Great Western Bank. John A. Lentz appeared for the debtors and Shawn Dontigney and Corey Stull appeared for Great Western Bank.

FACTS

On June 2, 2005, defendant bank's predecessor-in-interest, TierOne Bank, filed a UCC Financing Statement indicating a lien on, among other things, all crops, farm products and livestock. The Fischers had entered into a security agreement for the financing of the farm operation and the purchase of machinery. On January 21, 2008, the Fischers filed a petition in Chapter 12 bankruptcy as a result of the threats of foreclosure because timely payments on the loan had not been made.

At the time of the filing of the bankruptcy, Fischer had no crops growing or grain on hand, but had the proceeds checks from the sale of grain from the 2007 crop. The Fischers were given permission to cash the proceeds checks and use the funds to plant the 2008 crop. The 2008 crop was fully funded by the 2007 crop proceeds. The 2008 proceeds were applied to basic living expenses, payments to the Chapter 12 trustee and remodeling a house that was later sold with permission from the court. None of the proceeds from the 2008 crop were used for planting the 2009 crop. Since that time, none of the crops have been funded with proceeds from grain encumbered by the bank's liens.

On July 15, 2010, Fischer filed a motion entitled, "Motion to Declare Grain Not Subject to Lien of TierOne Bank N/K/A Great Western Bank." The motion requested that grain harvested from 2010 and all subsequent crop years be declared not subject to the bank's lien. On August 10, 2010, a text order was entered granting the motion. In early November 2010, the debtors attempted to obtain financing from Peoples-Webster County Bank to fund the purchase of 35 head of bred Angus heifers. The bank denied the financing because the UCC Financing Statement had not been terminated or modified. The debtors then entered into a stipulation with the bank resolving the issue with respect to release of future crop liens.

Then the debtors and the bank entered into a stipulation resolving the bank's motion to compel payment of delinquent real estate taxes. The stipulation was approved on November 19, 2010. The stipulation required the debtors to file affidavits attesting that a sale of cattle had been conducted and to report where the proceeds of the sale went. The bank was then to release its security interest in cattle and the debtors' present and future crops. The debtors complied with the stipulation by February 4, 2011. They also executed an amended effective financing statement during February of 2011. The bank received the amended effective financing statement fully executed by the debtors sometime in March 2011.

In February of 2011, the debtors approached David W. DiGiovanni of Peoples-Webster County Bank for an operating loan of $74,000 to fund the planting of the 2011 corn crop. The banker informed the debtors that the bank could loan the money based upon the orders of this court. However, on or about June 6, 2011, when the debtors approached Mr. DiGiovanni to draw on the operating loan, the banker discovered that the UCC liens had not been released. After contact with Great Western Bank through the lawyers, the bank eventually filed an amended UCC financing statement on June 17, 2011, at 4:25 p.m.

The debtors needed the funds to purchase and apply fertilizer and weed chemicals during a 10-day window from the date the 2011 crop was planted. Because the UCC amended financing statement was not filed until June 17, 2011, the 10-day window was lost and the weed control was not effective for 2011 and apparently that lack of control affected the 2012 crop, also.

The debtors believe the bank violated the August 2010 order of the court, the November 2010 order of the court and the automatic stay by failing to timely release the lien. Therefore, the debtors filed this motion in three counts, requesting findings in two counts that the bank was in contempt of court for failure to comply with the court orders and was in violation of the automatic stay for failure to timely release the liens, post-petition. In addition to findings of contempt and violation of the automatic stay, the debtors request a determination of damages resulting from the violations.

Trial was held on the issue of liability for contempt and violation of the automatic stay. The question of damages was left for determination if the bank is found in contempt or in violation of the automatic stay.

Mr. Fischer testified as to all of the above-listed facts. Mr. DiGiovanni testified that his bank was ready to make the loans requested by Mr. Fischer, but it could not do so without the bank liens being terminated.

A representative of the bank testified that the bank's lawyer and the bank officers read the July 15 motion to mean that the lien on the 2010 crop was to be terminated, and it was terminated. His support for the position that the motion was limited to the 2010 crop is the prayer in the motion which referred to releasing the lien on the grain. The word "grain" was a defined term in the motion meaning the 2010 crop.

He further testified that although the bank did receive the amended UCC financing statement fully executed by the debtors by sometime in March of 2011, the bank employees did not intentionally fail to file the document until June 17. Instead, he testified that the time period from February through April of 2011 was when the FDIC and the bank were reviewing the loan files that were to be transferred to the bank as a result of the failure of TierOne Bank. In other words, the employees simply overlooked the fact that this matter with the Fischers was of significant importance to the Fischers. Finally, he testified that as soon as the matter was brought to the attention of the appropriate bank officer in June 2011, the UCC document was filed within three days.

The bank's representative also testified that the bank never releases or terminates UCC financing statements during the pendency of a bankruptcy unless it is specifically ordered to do so by the court or by agreement with the debtor. The reason for not terminating the lien documents

during a bankruptcy is that if the bankruptcy is dismissed, the liens which would reattach to the collateral if they had not been released during the bankruptcy case would not reattach and the bank's collateral would be impaired.

## CONCLUSIONS OF LAW AND DISCUSSION

The motion requesting findings of contempt and violation of the automatic stay is denied. In order for a court to find civil contempt, the movant must prove that the offending party violated a specific order of which he or she was aware. Both elements must be established by clear and convincing evidence. Koehler v. Grant, 213 B.R. 567, 570 (B.A.P. 8th Cir. 1997). Willfulness is not an element of a civil contempt claim. Id. at n.8. "If the acts done are clearly in contravention of the court's decree, the intention is of no consequence. The absence of wilfulness does not relieve an individual from civil contempt." N.L.R.B. v. Ralph Printing & Lithographing Co., 433 F.2d 1058, 1062 (8th Cir. 1970).[1]

The evidence is insufficient with regard to the willfulness or intention of bank employees to disobey orders of the court. It was not unreasonable for the bank employees to interpret the August 10, 2010, order granting the July 15, 2010, motion to be limited to terminating the lien on the 2010 crop. First of all, under the bank procedure, that would be a normal practice. That is, it would not be a blanket release or termination of the UCC financing statements unless there was a clear order requiring such action. Because the prayer of the motion was limited, the bank action was reasonable.

The failure of the bank to file the amended UCC financing statement from March to June of 2011 was a result of negligence, not intent or willfulness. There was no communication between the debtors and the bank about a time frame for filing the amended UCC financing statement from the time it was presented to the bank until after Mr. DiGiovanni discovered, through a UCC search, that the amended UCC financing statement had not been filed. From March to June, neither the debtor, debtor's counsel nor Mr. DiGiovanni attempted to determine the status of the liens. Although the bank can be faulted for its negligence, it cannot be found in contempt of court when nobody attempted to bring it to the bank's attention until June that the Fischers were relying upon the filing of the document in order to obtain their financing in June of 2011. As soon as it was brought to the attention of the bank employees, the document was filed.

There is nothing in the November 2010 stipulation concerning the filing of the amended UCC financing statement that gave a time frame for such filing. There is nothing in the court orders that gave a time frame for releasing the liens.

Although the Bankruptcy Code, at 11 U.S.C. § 552, provides that pre-petition liens do not attach to post-petition crops, there is nothing in the Bankruptcy Code that requires lien documents to be terminated automatically by the bank just because a bankruptcy case is filed. Section 552 cuts off a pre-petition lien interest in after-acquired property, but it puts no affirmative duty on the

---

[1] However, willfulness may be an element when making a finding of contempt for violating the discharge injunction of § 524(a)(2). Hubbard v. Fleet Mortg. Co., 810 F.2d 778, 781 (8th Cir.1987) (noting that the proceedings were "of a dual nature," involving aspects of civil and criminal contempt, and criminal contempt requires a finding of willfulness). The matter at bar deals only with civil contempt.

lienholder to release the lien upon learning of the bankruptcy filing. See In re Olivas, 129 B.R. 122, 126 (Bankr. W.D. Tex. 1991) (holding that "this court cannot impose, in the name of enforcing the automatic stay, an affirmative duty on the creditor to release a lien. Such a result would be a de facto taking of the Bank's property without due process of law[.]").

The bank did not violate the automatic stay by not releasing the lien on a timely basis.

IT IS ORDERED: The debtors' motion for contempt and motion for sanctions (Fil. No. 162) is denied.

DATED:    July 1, 2013

BY THE COURT:

/s/ Timothy J. Mahoney
United States Bankruptcy Judge

Notice given by the Court to:
   *John A. Lentz
   Shawn Dontigney
   U.S. Trustee

* Movant is responsible for giving notice of this order to all other parties not listed above if required by rule or statute.